# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

SETH GANAHL,
Reg. #28942-009                                                                          PLAINTIFF

V.                                    4:16CV00015 BRW/JTR

JOHN STALEY,
Sheriff of Lonoke County, et. al.                                                     DEFENDANTS


## RECOMMENDED DISPOSITION

The following Recommended ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received by the Clerk of this Court within fourteen (14) days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I. Introduction

Plaintiff Seth Ganahl ("Ganahl") is a federal prisoner in Illinois. He has filed this *pro se* § 1983 action alleging that, while he was a pretrial detainee at the Lonoke County Detention Center ("LCDC"), Defendants Sheriff John Staley ("Staley"), Captain Buford ("Buford"), and Officer Lopez ("Lopez") subjected him to unconstitutional conditions of confinement by failing to provide him with adequate opportunities for exercise. *Docs. 2 & 6.* Ganahl has sued Defendants in both their individual and official capacities. *Id.* By way of relief, he seeks a declaratory judgment, a permanent injunction, and punitive damages. *Id.*

Defendants have filed a Motion for Summary Judgment, a Brief in Support, a Statement of Undisputed Facts, and a Reply. *Docs. 42, 43, & 44.* Ganahl has filed a Response, a Brief, and a Statement of Disputed Facts. *Docs. 51, 52, & 53.*

Before addressing the merits of Defendants' Motion, the Court will summarize the relevant facts giving rise to Ganahl's claim:[1]

1. Ganahl was a pretrial detainee at the LCDC from March 16, 2015, until

---

[1] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

April 5, 2016. *Docs. 44 & 53.* During those thirteen months, Ganahl was housed in three different pods.[2] *Id., Doc. 6.*

2. For the first month, from approximately March to April of 2015, Ganahl was housed in D pod, which is a two tiered pod that contains two-man cells and a single dayroom on the lower floor.[3] *Docs. 44 & 55.* Detainees in D pod are locked in their two-man cells, which are approximately sixty square feet, eleven hours a day, from 9:30 p.m until 8:30 a.m. *Id.* While in their two-man cells, detainees are allowed to perform calisthenics and jog in place. However, Ganahl alleges that there was insufficient free space for him to do so.[4] *Docs. 2 & 6.*

---

[2] The parties disagree on the dimensions of the pods and the free space inside each pod that was available for exercise. Ganahl bases his measurements on estimate he allegedly made while confined in each pod. *Docs. 2 & 6.* In contrast, Defendants base their measurements on an Affidavit provided by Lopez, who is now the LCDC Jail Administrator. *Doc. 44, Ex. 1.* In his Affidavit, Lopez explains that, although he is "generally familiar with the layout" of the LCDC, the exact measurements were provided to him by Deputy Shirley (a non-party). However, Defendants have *not* provided *Deputy Shirley's sworn testimony* explaining the measurements he personally obtained. Instead, Defendants ask the Court to rely on Lopez's summarization of what Deputy Shirley allegedly *told him,* which is clearly inadmissible hearsay. *See* Fed. R. Evid. 801 & 802.

The dimensions of Ganahl's various living quarters at the LCDC, the usable free space he had to exercise in each of those areas, and exactly how long he was confined in each of those areas are *highly relevant facts* that could have been established, *beyond legitimate dispute*, with admissible business records or affidavits. Because that has not been done, the Court will construe these *disputed and highly relevant facts* in Ganahl's favor.

[3] Defendants explain that the LCDC "does not electronically monitor inmate movements between pods and is unable to identify the specific dates when Plaintiff was housed in the different pods without devoting many hours to locating, reviewing, and compiling this data from hundreds of pages of documents." *Doc. 44 at 1.*

[4] Neither party has provided the dimensions of the bunk beds in the sixty square foot cells, or explained whether the available free space to exercise was further limited by a toilet, sink, or other physical obstruction.

3. From 8:30 am until 9:30 p.m., the detainees in D pod are allowed into the day room, which Ganahl claims has approximately 180 square feet of usable space that is shared by sixteen pretrial detainees. *Doc. 6 at 5.* In his Affidavit, Lopez explains that detainees in D pod are *not* allowed to perform calisthenics or jog in place in the dayroom because:

> it would create a safety hazard for detainees (tripping events) and because when detainees are on the floor doing exercises, it can mimic emergent situations and cause unnecessary effort and distraction to investigate whether or not a detainee needs medical treatment.

*Doc. 44, Ex. 1 at 3* (parenthetical notation in the original). According to Lopez, the detainees in D pod are allowed to "exercise" in the day room by "walking around" and walking up and down the stairs between the two tiers. *Id.* Ganahl claims that, due to the limited usable space shared by sixteen men, neither of these two options provided him with a meaningful opportunity for exercise. *Doc. 53 at 1.*

4. During the next nine months, from April of 2015 until January of 2016, Ganahl was housed in A pod, which is a two tier open barrack. *Docs. 6, 44, & 54.* The top tier of A pod has thirteen bunks. The bottom tier has seventeen bunks.[5] *Id.* Each tier has a separate day room, which Ganahl claims has "essentially no usable" space to walk around. *Doc. 53 at 2.* The parties *agree* that, for the reasons explained in Lopez's Affidavit, detainees in A pod are *not* allowed to perform

---

[5] It is unclear whether Ganahl lived on the bottom or top tier.

calisthenics or jog in place in the day rooms. *Docs. 44 & 53.* Because there are no individual cells, it appears that Ganahl was not allowed to jog in place or perform calisthenics, at all, for the nine months that he was held in A pod.

5. During his final three months at the LCDC, from January to April of 2016, Ganahl was confined in G pod which has the same configuration as D pod. *Doc. 6 at 9-10.* The only difference is that, while he was in D pod, Ganahl was allegedly confined to his two man cell for seventeen hours a day, from 3:30 p.m. until 8:30 a.m. *Id.*

6. The parties agree that the LCDC has a "Recreation Room" that contains a basketball hoop and a handball court. *Docs. 44 & 53.* Accordingly to Ganahl, the "Recreation Room": (a) has approximately 2400 square feet of usable space; (b) is located next to one of the pods; (c) has a barred window that could be opened to allow fresh air inside; and (d) opens into a fenced area that could be used for yard call. *Doc. 6 at 10; Doc. 53.* In his Affidavit, Lopez explains that the LCDC detainees were *not* allowed to use the "Recreation Room" because it:

> is not heated nor cooled with air conditioning, fights break out, injuries occur, and it creates an administrative, safety, and security hardship to give inmates access to this room for exercise.

*Doc. 44, Ex. 1 at 3.*

7. It is undisputed that Ganahl was *never* allowed to go outdoors for yard call during the *thirteen months* that he was a pretrial detainee at the LCDC. *Docs.*

5

*44 & 53.* Lopez explains, in his Affidavit, this was because *no prisoners* were allowed to go outdoors due to LCDC not having any outdoor space suitable for yard call. Ganahl disputes whether LCDC has suitable outdoor space available for yard call. *Id.*

8. In his Affidavit, Lopez explains that the Arkansas DFA Criminal Detention Facilities Review Committee ("Review Committee") inspected the LCDC in 2015 and 2016. According to Lopez, the LCDC "did not get any negative marks, comments, or criticisms as part of the review process concerning space and options for inmate exercise." *Doc. 44, Ex. 1 at 4.* However, Defendants have *not* provided copies of the Review Committee's findings or the standards they used when making their inspection. Similarly, Lopez has not explained whether the Review Committee knew that detainees were never allowed to go outdoors, not allowed to use the "Recreation Room," and prohibited from jogging in place or performing calisthenics in the dayrooms.

9. In contrast, Ganahl claims that the LCDC was *not* in compliance with Arkansas jail standards. *Doc. 53.* In support of that contention, Ganahl has produced a document entitled "Criminal Detention Center Standards, 2014*." Doc. 53 at 4-31.* It is unclear whether these standards were in effect when Ganahl was in the LCDC *in 2015 and 2016.* Nevertheless, Ganahl alleges that the LCDC violated the following two provisions of that document:

6

> Section 14-1005 <u>INMATE EXERCISE</u>
> Exercise outside the cell shall be made available to all inmates on a daily basis for one hour, provided the inmate(s) elect to participate. This standard is subject to the discretion of the Chief Executive in situations where security maybe jeopardized.
>
> . . .
>
> Section 15-1016 <u>EXERCISE SPACES</u>
> Inmates incarcerated in excess of 14 consecutive days *shall* have access to *outdoor* and indoor exercise areas. Indoor exercise programs shall be in spaces in which lighting, temperature, and ventilation are appropriate for the activity to be conducted. Hallway areas or bullpen areas in front of cells or rooms will not be considered exercise spaces.

*Doc. 53 at 29* (emphasis added).[6]

## II. Discussion

**A.    The Physical Injury Rule**

The parties *agree* that Ganahl did not suffer a physical injury as a result of the conditions of his confinement in the LCDC. *Doc. 43 & 53*. Defendants argue that this undisputed fact, standing alone, entitles them to summary judgment pursuant to the physical injury rule found in the Prison Litigation Reform Act ("PLRA"). *Doc. 43 at 6*. That argument is legally incorrect.

The PLRA provides, in pertinent part, that: "no Federal civil action may be

---

[6] "Exercise" is not defined. However, document clarifies that the terms "inmate" and "detainee" are "used interchangeably" and "refer to both those persons charged with criminal violations who are awaiting trial and those persons being confined after conviction.*" Doc. 53 at 6.*

brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Eighth Circuit has clarified that this language (which is known as the "physical injury rule") only applies to claims for *compensatory damages. See Sisney v. Reisch*, 674 F.3d 839, 843 (8th Cir. 2012); *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004). Thus, a prisoner, who suffers no physical injury, may properly pursue a constitutional claim to recover punitive damages, nominal damages, a declaratory judgment, and injunctive relief.

Accordingly, Defendants are not entitled to summary judgment based on Ganahl's admission that he suffered no physical injury. Additionally, because Ganahl *concedes* in this Complaint and Amended Complaint that he is *not seeking compensatory damages,* the physical injury rule has no application in this case. *Docs. 2 & 6.*

**B.     Qualified Immunity**

Defendants argue that they are entitled to qualified immunity on the inhumane conditions of confinement claim Ganahl has raised against them in their individual capacities.[7]

---

[7] Ganahl alleges that Staley, Buford, and Lopez are liable, in their individual capacities, because they enacted and enforced the LCDC exercise limitations and denied his grievances challenging those limitations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (explaining that, to prevail on a constitutional claim raised against defendants in their individual capacities, a

In a § 1983 action, qualified immunity protects government officials, sued in their individual capacities, from liability for monetary damages unless their conduct violates a clearly established federal statutory or constitutional right that a reasonable person would have known.[8] *Ashcroft v. Al-Kidd*, 563 U.S. 731, 736 (2011); *Saylor v. Nebraska*, 812 F.3d 637, 643 (8th Cir. 2016). To "overcome the defense of qualified immunity," Ganahl must show that: (1) the facts, viewed in the light most favorable to him, demonstrate the deprivation of a constitutional right to humane conditions of confinement; and (2) that constitutional right was clearly established, in 2015 and 2016, which is when the alleged constitutional violation occurred. *Saylor,* 812 F.3d at 643; *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009).

To demonstrate a violation of his constitutional right to humane conditions of confinement claim, Ganahl must show that: (1) objectively, he suffered a "substantial risk" of serious harm to his health or safety; and (2) subjectively, Staley, Buford, and Lopez were deliberately indifferent to that substantial risk of harm.[9]

---

plaintiff must demonstrate that "each Government-official defendant, through the official's own individual actions, has violated the Constitution").

[8] The qualified immunity defense does *not* apply to the claims Ganahl has asserted against Defendants in their official capacities, or to his claim for equitable injunctive relief. *See Gorman v. Bartch*, 152 F.3d 907, 914 (1998); *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995).

[9] Because Ganahl was a pretrial detainee, his inhumane conditions of confinement claim is governed by the Due Process Clause of the Fourteenth Amendment, instead of the Cruel and

*Davis v. Oregon Cnty., Mo.*, 607 F.3d 543, 548-49 (8th Cir. 2010); *Butler v. Fletcher,* 465 F.3d 340, 345 (8th Cir. 2006). When applying this two-part test to a prisoner's challenge to physical exercise restrictions, the fact finder may consider: (a) the opportunity to be out of the cell; (b) the availability of recreation within the cell; (c) the size of the cell; (d) the duration of confinement; and (e) the extent of any physical injury. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992).[10]

In this case, it is *undisputed* that Ganahl was not allowed to go outdoors for thirteen consecutive months. In *Bailey v. Shillinger,* 828 F.2d. 651, 653 (10th Cir. 1987), the Court recognized that there "is substantial agreement" among the circuit

---

Unusual Punishment Clause of the Eighth Amendment that applies to convicted prisoners. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). For many years, the Eighth Circuit has applied the same deliberate indifference standard to conditions of confinement claims based on either the Fourteenth or Eighth Amendment. *See Davis*, 607 F.3d at 548-49; *Butler,* 465 F.3d at 345. On January 17, 2017, an Eighth Circuit panel held that an "objective unreasonableness" standard, rather than the deliberate indifference standard, should be applied to conditions of confinement cases brought by pretrial detainees under the Fourteenth Amendment. *Ingram v. Cole Cnty*, 846 F.3d 282 (8th Cir. 2017). However, on April 17, 2017, a majority of the active Eighth Circuit Judges *vacated* that panel opinion to allow the full Court to hear and decide that issue *en banc*. To date, no opinion has been issued. Thus, the current law in the Eighth Circuit is that the Eighth Amendment deliberate indifference standard applies to conditions of confinement cases brought by pretrial detainees, such as Ganahl.

[10] Defendants imply that, in *Wishon*, the Court held that a physical injury was required. However, in *Wishon,* the Court stated that the "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy *or* if an inmate's health *is threatened." Wishon,* 978 F.2d. at 449 (emphasis added). After acknowledging that the plaintiff "did not suffer any injury or decline in health," the *Wishon* Court *went on* to consider the remaining factors (i.e., the opportunity to be out of the cell; the availability to exercise insides the cell; the size of the cell, and the duration of confinement). *Id.* Thus, Ganahl's lack of a physical injury is only *one* of the factors that must be considered when determining whether Defendants' exercise restrictions created a substantial risk of harm.

courts that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of inmates."  Although the Eighth Circuit has not yet determined how often a prisoner must be allowed outdoors for exercise, Ganahl asserts that Arkansas jail standards required that he be allowed outdoors at least every fourteen days.  *See Campbell v. Cauthron*, 623 F.2d 503, 507 (8th Cir. 1980) (noting that a violation of the "minimal standards promulgated by the Arkansas Criminal Detention Facilities Board" was persuasive evidence that a constitutional violation had occurred).

In addition to a lack of outdoor exercise, it is undisputed that the LCDC also substantially limited Ganahl's ability to exercise *indoors*.  *See Wilson v. Seiter,* 501 U.S. 294, 304-305 (1991) (holding that the combined deprivation of adequate outdoor and indoor exercise opportunities is a constitutional violation); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (explaining that, although "we have never set a limit on how often prisoners must be allowed to exercise," thirty-seven days without "yard call and gym call" is "pushing the outer limits of acceptable restriction").

The parties agree that, *for thirteen months*, Ganahl was prohibited from using the "Recreation Room."  The parties also agree that, *for thirteen months,* Ganahl was not allowed to perform calisthenics or jog in place while in any of the day rooms. Although Ganahl was allowed to "walk" around the day rooms and "walk" the stairs,

11

he alleges that, due to the limited amount of free space shared by numerous detainees using the day rooms, neither activity was sufficient to give him a meaningful opportunity to exercise. *See Campbell,* 623 F.2d at (holding that pretrial detainees and prisoners must be given a "meaningful opportunity for exercise" and that "[m]erely allowing [them] to walk around in the narrow corridor between cells does not provide adequate exercise").

Ganahl also alleges that, while he was in D and G pods for *four months*, there was insufficient room for him to jog in place or perform calisthenics inside his two-man cell, where he was confined for eleven hours (D pod) and seventeen hours (G pod) each day. *See Campbell,* 623 F.2d at 507 (holding that pretrial detainees were entitled to at least one hour of "meaningful" out of cell exercise for every sixteen hours that they were held individual cells). Similarly, it appears that for the *nine months* that Ganahl was in the open barracks in A pod, he was not allowed to jog in place or perform calisthenics *at all*.

The Court concludes that the combined indoor and outdoor exercise restrictions, *viewed in the light most favorable to Ganahl and if proven at trial,* would demonstrate the deprivation of his constitutional right to humane conditions of confinement. Because that constitutional right was clearly established long before Ganahl was confined in the LCDC *in 2015 and 2016,* the Court concludes that Defendants are not entitled to qualified immunity. *See Wilson,* 501 U.S. at 304-

305 (1991) (holding that the combined deprivation of adequate outdoor and indoor exercise opportunities is a constitutional violation); *Campbell,* 623 F.2d. at 507 (1980) (same); *Wishon*, 978 F.2d at 449 (1992) (same); *Phillips,* 320 F.3d at 847 (2003) (same). Thus, Defendants' Motion Summary Judgment on Ganahl's inhumane conditions of confinement claim, based on qualified immunity, should be denied.

**C.     Official Capacity Claim**

Defendants argue that they are entitled to summary judgment on the inhumane conditions of confinement Ganahl has asserted against them in their official capacities. As a matter of law, this claim by Ganahl is deemed to have been asserted against Lonoke County. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010); *Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 631-32 (8th Cir. 2009).

Under § 1983, Lonoke County can not be held liable for the vicarious actions of its employees. *Monell v. Dept, of Soc. Servs.,* 436 U.S. 658 (1978). However, it can be held liable, for monetary damages and equitable relief if Defendants Staley, Buford, and Lopez violated Ganahl's constitutional rights while they were following or enforcing Lonoke County's official policies, practices, or customs.[11] *Jenkins*, 557 F.3d at 632; *Grayson v. Ross*, 454 F.3d 802, 810-11 (8th Cir. 2006).

---

[11] Counties, unlike states, are *not* entitled to sovereign immunity from damages under the Eleventh Amendment. *See N. Ins. Co. of N.Y. v. Chatham Cnty., Ga.*, 547 U.S. 189, 193 (2006) ("This Court has repeatedly refused to extend sovereign immunity to counties").

Defendants argue that they are entitled to summary judgment because Ganahl has no evidence that "the allegations in his complaint were attributable to any policy, official or otherwise, of Lonoke County." *Doc. 43 at 5*. In his Affidavit, Lopez *admits* that the exercise restrictions Ganahl endured were *consistent with* and *according to* the LCDC's unwritten policies, practices, and customs, which supplies the very evidence that Defendants claim Ganahl has not produced. Furthermore, Ganahl explicitly alleges that each of the Defendants carried out and acted consistently with LCDC's policies, practices, and customs, which he believes to be unconstitutional. Thus, the Court finds no merit to this argument.

It appears that Defendants also may be arguing that Lonoke County is not legally responsible for the policies, practices, and customs of the LCDC. *Doc. 43 at 5.* However, it is well settled that a jail is *not* a legally separate entity from the county that operates it. *See Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003); *Williams v. Pulaski Cnty. Det. Facility*, Case No. 07-3851, 2008 WL 2079104 (8th Cir. May 19, 2008) (unpublished opinion); *De La Garza v. Kandiyohi Cnty. Jail*, Case No. 01-1966, 2001 WL 987542 (8th Cir. Aug. 30, 2001) (unpublished opinion). Thus, the LCDC's policies, practices, and customs are legally attributable to Lonoke County. *Id.*

Accordingly, the Court concludes that Defendants are not entitled to summary judgment on the inhumane conditions of confinement claim raised against them in

their official capacities.

## III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendants' Motion for Summary Judgment *(Doc. 42)* be DENIED.

Dated this 16th day of November, 2017.

_____
UNITED STATES MAGISTRATE JUDGE